UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JIYA LAL GUPTA,

        Plaintiff,

v.

        File No. 1:09-CV-573

        HON. ROBERT HOLMES BELL

BARTON CRANE, et al.,

        Defendants.
                              /

**O P I N I O N**

Plaintiff Jiya Lal Gupta is a resident of Okemos, Michigan. Defendants Barton Crane and Dale Hausermann are police officers employed by Defendant Meridian Charter Township ("Township"). Plaintiff's action arises from the alleged assault, arrest, detention, and imprisonment of Plaintiff by Defendants on June 1, 2007. Before the Court is a motion for summary judgment filed by Defendants. (Dkt. No. 14.) After consideration of Defendants' motion, the Court has determined that oral argument is not necessary.

**I. Background**

Shortly after 10:00 p.m. on the evening of June 1, 2007, a 911 caller reported that a man walking down the sidewalk in a residential area of the Township "appeared intoxicated" because he was "walking slowly" and "stumbling." Officers Crane and Hausermann

responded to a dispatch to investigate.[1] Shortly before arriving at Plaintiff's location, Officer Hausermann pulled over and spoke with the caller. She told him:

> He's on Yosemite headed that way now. He appears to be pretty drunk. I think. You know, he just stopped [inaudible] gonna go for a walk and he just stopped and he's staring, so, and he doesn't look familiar to me. . . .

(*Id.*) Officer Crane made first contact with Plaintiff and asked him to stop. According to his affidavit, Plaintiff told Officer Crane that he was on his way home to have dinner, and pointed across the street to his house. (Dkt. No. 17, Pl.'s Br. in Opp'n to Mot. to Dismiss, Ex. A, Gupta Aff. ¶ 6.) At an evidentiary hearing in state court, Officer Crane testified that he smelled the odor of intoxicants on Plaintiff's person and saw Plaintiff stumbling and having difficulty standing. (Dkt. No. 15, Defs.' Mot. to Dismiss, Ex. 3, 04/12/2007 Hr'g Tr. 9.) The video, which this Court viewed in conjunction with this motion, shows that, when Officer Hausermann arrived at the scene, Plaintiff was standing on the sidewalk surrounded by several officers. Plaintiff told the officers that his name was "Jay"[2] and his last name was "Gupta." Plaintiff told Defendants that he was on private property and that Defendants should talk to "Dave" their "chief" because "he knows me." Defendants asked if he was referring to Dave Hall, and Plaintiff replied that he was. An officer asked Plaintiff if his name was "Gupta, Gupta" and Plaintiff responded "Yes, yes." Officer Crane asked Plaintiff

---

[1] Defendants have offered a video taken from the camera of Officer Hausermann's cruiser. (Dkt. No. 15, Pl.'s Br. in Support of Mot. to Dismiss, Ex. 2, Mobile Vision DVD.)

[2] It is unclear whether "Jay" is a nick-name or if that is the proper pronunciation of Plaintiff's first name.

2

for his date of birth and Plaintiff responded, "Okay, talk to Dave Hall, good-bye. Dave Hall, go talk to Dave Hall." One of the officers told Plaintiff that they were concerned for Plaintiff's safety because he was stumbling and having difficulty walking. Plaintiff repeated "No, no, Dave Hall." An officer told Plaintiff that he was being loud. Plaintiff told the officers that he was on private property, said "good-bye" several times and walked away toward the street. The officers told Plaintiff several times to "hang on" and "come here." Officer Crane and another officer followed Plaintiff. One officer stated "Listen to me sir," and another stated, "Okay, now you're intoxicated in public. Whoa," as Plaintiff walked into the street and out of view of the camera. Officer Hausermann remained on the sidewalk until the other officers following Plaintiff walked out of view of the camera. Officer Hausermann then ran across the street toward the location of the other officers. Plaintiff is not seen running on the video, but Defendants allege that he started running toward his house. Plaintiff alleges that he walked across the street and that, when he made it to the front lawn of his home, he was pulled down to the ground by one of the officers and placed into handcuffs. Plaintiff stated repeatedly that he was on his own property. Plaintiff was placed into Officer Hausermann's cruiser, wherein he gave his full name and refused to take a breathalyser test. After some time, Plaintiff's wife came out of the house and spoke to him through the window of the cruiser. Plaintiff was then taken to jail in East Lansing. Plaintiff alleges that he was injured during the arrest and that, at the jail, officers aggressively attempted to remove his wedding ring and injured his finger. Plaintiff was kept in jail overnight and issued a ticket for disturbing the peace.

The prosecutor's office issued a complaint in 55th Judicial State District Court charging Plaintiff with obstructing/opposing law enforcement in violation of Township ordinance 50-141. Plaintiff filed a motion to dismiss the charge. Prior to an evidentiary hearing on that motion, the prosecutor dismissed the disturbing-the-peace ticket and proceeded with the complaint. After an evidentiary hearing, the court dismissed the complaint.

Plaintiff's civil complaint alleges the following counts of violation of state and federal law: (Count I) assault and battery, (Count II) intentional infliction of emotional distress, (Count III) false imprisonment, malicious prosecution and abuse of process based on alleging criminal activity without probable cause and with malice, (Count IV) abuse of process based on using criminal process for ulterior motives or in retaliation for Plaintiff's constitutional right to disengage from an encounter with police, (Count V) 42 U.S.C. § 1983 claim based on failure to provide adequate training and instruction, (Count VI) § 1983 claim for violation of the Fourth and Fourteenth Amendments due to arrest and imprisonment without probable cause, (Count VII) § 1983 claim for punitive damages based on arrest without probable cause, (Count VII)[3] unfair and unjust treatment in violation of Art. I, § 17 of the Michigan Constitution, (Count VIII) gross negligence and recklessness, and (Count IX) claim for damages.

---

[3] This count is also labeled "Count VII" in the complaint.

## II. Analysis

### A. Voluntarily Dismissed Claims

Plaintiff concedes to dismissal of his § 1983 claims against the officers in their official capacities. (Dkt. No. 17, Pl.'s Resp. in Opp'n to Mot. to Dismiss 5.) He also concedes to dismissal of his state law claims against the Township. (*Id.* at 20.) Finally, Plaintiff concedes to dismissal of the intentional infliction of emotional distress claim in Count II, the abuse-of-process claim in Count IV, his § 1983 claim for failure to train in Count V, and his claim for violation of the Michigan constitution in Count VII. (*Id.* at 6, 20, 21, 23.) Accordingly, the Court will dismiss foregoing claims with prejudice.

### B. Section 1983 Claims

On a motion for summary judgment, the movant must show that "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering such a motion, the Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To defeat a properly supported motion for summary judgment, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

Plaintiff contends that his arrest and confinement violated his rights under the Fourth and Fourteenth Amendments. Defendant officers contend that their actions did not violate

the Fourth or Fourteenth Amendments and that, in the alternative, they are entitled to qualified immunity.

1. Initial stop

Defendants argue that no Fourth Amendment violation resulted when Defendants stopped Plaintiff on the sidewalk because: (1) they had reasonable suspicion of a violation of the ordinance prohibiting public intoxication, and (2) the officers were acting pursuant to the "community caretaker exception" to the Fourth Amendment.

Under *Terry v. Ohio* 392 U.S. 1 (1968), the Fourth Amendment allows officers to briefly detain individuals without probable cause if there exists a reasonable suspicion, based on the totality of circumstances and the officer's experience, that criminal activity "may be" afoot. *Id.* at 30; s*ee United v. Cortez*, 449 U.S. 411, 417 (1981) ("An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity."). The "criminal activity" at issue is violation of the Township public intoxication ordinance, which states:

> It shall be unlawful for any person to knowingly or recklessly be intoxicated in any public place and:
>
> (1) Engage in conduct which endangers directly either the safety of another person or of property; or
>
> (2) Act in any manner that causes a public disturbance.

(Township Ordinance 50-3.)

The officers' initial investigation and stop were based on the observations of the 911 caller that Plaintiff was walking slowly and stumbling, and Officer Crane's observations that Plaintiff was stumbling and having difficulty standing, which are restated in the video. Defendant offers no evidence dispute the assertion that he was intoxicated, or that he was stumbling or having difficulty walking. Having received a call from a concerned resident regarding conduct that was suggestive of public intoxication, Defendants were justified in stopping Plaintiff to investigate a possible violation of this ordinance.

Moreover, the community-caretaker rule recognizes that authorities frequently engage in actions to guarantee the safety of the public, but that are "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute . . . ." *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973). The rule serves to support the reasonableness of warrantless searches and seizures by authorities, much like the exigent circumstances exception. Thus, the Supreme Court determined in *Cady* that the warrantless search of an unoccupied vehicle on public property was reasonable because the officers were acting in a "caretaking" function to protect the public at large from the possible presence of firearms in the vehicle. *Id.* at 447. In *United States v. Rideau*, 969 F.2d 1572 (5th Cir. 1992), the Fifth Circuit held that officers did not violate the Fourth Amendment when they stopped and checked the condition of an individual "standing in the roadway at night in a high crime area, where public drunkenness was common" and who the officers reasonably believed to be drunk. *Id.* at 1574. The court cited *Cady* and noted that public intoxication

was a criminal offense and that "police have long served the public welfare by removing intoxicated people from the public streets, where they pose a hazard to themselves and others." *Id.*

Plaintiff argues that the community-caretaker rule does not apply because Defendants were not engaged in a caretaker function "divorced" from violation of a criminal statute, but were engaged in the investigation of a violation of the public-intoxication ordinance. Even assuming that Plaintiff is correct as to Defendants' *subjective* motivations, however, the proper inquiry is whether the circumstances *objectively* support the action. *Brigham City v. Stuart*, 547 U.S. 398, 404-05 (2006); *United States v. Huffman*, 461 F.3d 777, 783 (6th Cir. 2006). It is undisputed that Plaintiff was seen to be stumbling and walking with difficulty, alone, in a public place at night.[4] Under the community-caretaker exception, it was eminently reasonable for Defendants to stop and question Plaintiff in order to determine whether he was in need of assistance or posed a danger to himself or others.

For the same reasons, it was reasonable for Defendants to restrain Plaintiff after he walked away. The video record clearly indicates that Defendant officers attempted to obtain identifying information from Plaintiff but that Plaintiff offered confusing responses and was ultimately uncooperative, walking away from the officers into the street and then onto private

---

[4]Plaintiff does not contend that he was not intoxicated, but he asserts that he is hypoglycemic. Even if his condition was the cause of some or all of his behavior, there is no evidence that Defendants were aware of this condition, or that, in light of the facts known to them at the time, they should have suspected that his behavior was caused by something other than the influence of alcohol.

8

property, despite their repeated requests that he remain put. Though Plaintiff provided some identifying information, he prevented the officers from obtaining details sufficient to allow them to verify his identity and to assess the risk of allowing him to continue unimpeded. Under *Terry* and the community-caretaker exception, Defendants were justified in assuming physical custody over Plaintiff to continue to evaluate the severity of his condition, verify his identity, investigate a possible violation of the public intoxication ordinance, and prevent an unidentified, visibly impaired individual from causing a further disturbance or putting himself or others at risk.

2. False arrest and false imprisonment

While the community-caretaker function justifies the initial stop and temporary detention of Plaintiff, Defendants do not contend that the community-caretaker function justifies the arrest and imprisonment of Plaintiff, particularly after his identity was confirmed and it was discovered that he was located on his own property and could be released into the care of his wife. Instead, Defendants argue that they had probable cause to arrest and imprison Plaintiff for violation of Township ordinances.

Probable cause requires a showing that the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFellippo,* 443 U.S. 31, 37 (1979). In a § 1983 action, probable cause is generally a question of fact for the jury unless

9

there is only one reasonable determination possible. *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000). The Court agrees that Defendants reasonably concluded that they had probable cause to make an arrest for violation of Township ordinances.

The public intoxication ordinance makes it unlawful for an individual to be intoxicated in public and act in a manner that causes a "public disturbance." (Township Ordinance 50-3.) There is no genuine dispute that, prior to his contact with Defendants, Plaintiff was behaving erratically on a public sidewalk in a residential neighborhood late at night. Plaintiff contends that there are questions of fact as to whether his conduct caused a "public disturbance." Defendants contend, and Officer Crane testified, that Plaintiff was causing a disturbance, in part, by "staring at houses." (Hr'g Tr. 12.) There is no evidence that Plaintiff was staring at houses; however, there is no genuine dispute that Plaintiff's conduct caused a disturbance sufficient to lead a resident to call 911 and, it appears, to reconsider her plan to go for a walk in the neighborhood.

The disturbing-the-peace ordinance provides that it is unlawful to "knowingly or recklessly make any noise or disturbance or engage in any loud or boisterous conduct . . . by which the peace and quiet of any public place is disturbed . . . ." (Township Ordinance 50-81.) Plaintiff does not dispute that he was being loud, but he contends that there are questions of fact as to whether his responses to the police officers were sufficiently loud to violate the ordinance. Plaintiff indicates that Officer Hausermann testified that no neighbors complained or reported that Plaintiff was being loud. (Hr'g Tr. 34.) However, Defendants

10

are not required to *prove* that Plaintiff actually violated the ordinances; they must show that the facts and circumstances before them were sufficient for a person of "reasonable caution" to conclude that a violation had occurred. *DeFellippo*, 443 U.S. at 37. That standard has been met here. Having received a complaint from an identified witness regarding Plaintiff's erratic behavior, and having observed Plaintiff's erratic and indisputably loud behavior firsthand, Defendants could reasonably conclude that Plaintiff had violated the foregoing Township ordinances. In other words, the only reasonable determination possible is that probable cause existed to arrest and detain Plaintiff.

Even assuming that there remain issues of fact as to whether Plaintiff violated the Township ordinances, or whether probable cause existed for his arrest and confinement, Defendants would nevertheless be immune from suit under the doctrine of qualified immunity. In the Sixth Circuit, the test for qualified immunity involves a three-step inquiry: (1) the Court determines "whether based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred," (2) the Court considers "whether the violation involved a clearly established constitutional right of which a reasonable person would have known," and (3) the Court determines "whether the plaintiff has offered sufficient evidence 'to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.'" *Merriweather v. Zamora*, 569 F.3d 307, 315 (6th Cir. 2009) (quoting *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003)). Qualified immunity shields an officer from suit even when

his action violates constitutional rights, as long as he "reasonably misapprehends the law governing the circumstances." *Brosseau v. Haugen*, 543 U.S 194, 198 (2004). It is designed to provide "ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). In other words, an officer will be denied qualified immunity if he violates a statutory or constitutional right that was "so clearly established when the acts were committed that any officer in the defendant's position, measured objectively, would have clearly understood that he was under an affirmative duty to have refrained from such conduct." *Dominque v. Telb*, 831 F.2d 673, 676 (6th Cir. 1987) (quoted in *Nader v. Blackwell*, 545 F.3d 459, 473 (6th Cir. 2008)).

Defendants do not dispute that it was clearly established that they could not arrest and imprison Plaintiff without probable cause. The contentious issue is whether Defendants were justified in interpreting Plaintiff's conduct as a violation of the Township ordinances. Plaintiff indicates that Officer Hausermann conceded that staggering and slurring speech on a public sidewalk in the Township is not, in itself, a violation of the public intoxication ordinance. (Hr'g Tr. 36.) However, Officer Hausermann also testified that the ordinance prohibits such conduct where it causes a public disturbance. (*Id.*) The public intoxication ordinance does not define "public disturbance,"[5] though it is not disputed that at least one

---

[5] The Michigan Court of Appeals has determined that the "public disturbance" language in the Michigan public intoxication statute that is substantially similar to the Township ordinance is vague enough to support a constitutional challenge as applied to that case. *People v. Gagnon*, 341 N.W.2d 867, 870 (Mich. Ct. App. 1983). Rather than invalidate the statute, the court applied other language in the statute and held that an individual's conduct must endanger the safety of another person or property. *Id.* However, Plaintiff does not contend that the Township ordinance regarding public intoxication must be interpreted in this manner, or that Defendants should have understood it to prohibit only public intoxication that endangers the safety of another person or property.

member of the public was sufficiently disturbed by Plaintiff's erratic behavior to contact the authorities. The disturbing-the-peace ordinance does not specify the requisite level of noise required for "loud" behavior to disturb the "peace and quiet" of a public place and thereby violate the law. Interpreting a similar ordinance, the Michigan Court of Appeals indicated that it would consider whether the noise at issue would "offend a reasonable person of common sensibilities and disrupt the reasonable conduct of basic human activities." *City of Lansing v. Hartsuff*, 539 N.W.2d 781, 785 (Mich Ct. App. 1995). The court indicated that this approach would require evaluation of "all the surrounding facts and circumstances," and noted that otherwise acceptable conduct during the daytime might be a violation if it were occurring "in the middle of the night." *Id.* Though Defendants testified that no neighbors complained about the volume of Plaintiff's speech, that evidence does not establish that it was objectively unreasonable for Defendants to conclude that Plaintiff's indisputably loud conduct in a residential neighborhood late at night was sufficient to constitute a violation of the ordinance, even in the absence of complaints from neighbors. Plaintiff offers no authority to suggest that complaints from nearby individuals are *necessary* to establish a violation of the ordinance, much less to support a determination of probable cause for an arrest for violation of that ordinance.

In summary, based on the undisputed facts of the case, the only reasonable determination is that Defendants had probable cause to arrest and detain Plaintiff. Moreover, even if there were disputed issues of material fact, Defendants would be entitled to qualified immunity because the Court cannot conclude that Defendants' actions were objectively

13

unreasonable or that Defendants would have clearly understood that their conduct violated a clearly-established right. In other words, Plaintiff has not shown that it was unreasonable for Defendants to conclude that Plaintiff's conduct disturbed the "peace and quiet" of a public place, that Plaintiff was intoxicated in public, and that Plaintiff's actions while publicly intoxicated caused a "public disturbance," in violation of the public intoxication and disturbing-the-peace ordinances.

### 3. Malicious prosecution

Plaintiff contends that Defendants violated the Fourth and Fourteenth Amendments by maliciously issuing a disturbing-the-peace ticket that resulted in an improper prosecution. (Compl. ¶¶ 96, 99, 100; Dkt. No. 17, Pl.'s Resp. in Opp'n to Mot. to Dismiss ¶ 23.) Plaintiff's malicious prosecution claim fails as a matter of law because probable cause existed for his arrest and imprisonment. *See Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007) (noting that a Fourth Amendment malicious-prosecution claim pursuant to § 1983 "fails when there was probable cause to prosecute"). For the foregoing reasons, the Court will grant Defendants' motion for summary judgment with respect to Plaintiff's § 1983 claims.

**C. State Law Claims**

The remainder of Plaintiff's claims are state law claims. The Court declines to exercise supplemental jurisdiction over the remaining state law claims in this matter. 18 U.S.C. § 1367(c)(3). Because this case was removed from state court, the best course is to

remand the case to the state court from which it was removed. *Novak v. MetroHealth Med. Ctr.*, 503 F.3d 572, 583 (6th Cir. 2007). Therefore, the Court will remand the remainder of the claims in this case to the 35th Circuit Court in Ingham County, Michigan.

An order will be entered that is consistent with this opinion.


Dated: February 26, 2010                             /s/ Robert Holmes Bell
                                                     ROBERT HOLMES BELL
                                                     UNITED STATES DISTRICT JUDGE